USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/30/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEMAND ELECTRIC, INC., <br><br> Plaintiff, <br><br> -against- <br><br> INNOVATIVE TECHNOLOGY HOLDINGS, LLC, <br><br> Defendant. | 20-CV-02127 (VF) <br><br> **OPINION AND ORDER** |
| INNOVATIVE TECHNOLOGY HOLDINGS, Limited Liability Company <br><br> Plaintiff, <br><br> -against- <br><br> DEMAND ELECTRIC, INC. and DEMAND ELECTRIC NYC, INC., <br><br> Defendants. | |

**VALERIE FIGUEREDO, United States Magistrate Judge:**

Plaintiff Innovative Technology Holdings, LLC ("Innovative") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) against Defendants Demand Electric, Inc. ("Demand"), and Demand Electric NYC, Inc. ("Demand NYC") (collectively, the "Demand Entities"). Innovative seeks (1) a judgment in its favor on its claim for breach of contract based on unpaid invoices for goods and services it rendered to the Demand Entities; and (2) dismissal of Demand's claims for negligence, breach of contract, breach of warranty, and unjust enrichment. For the reasons that follow, Innovative's motion is **GRANTED**.

**BACKGROUND**

I. **Undisputed Factual Background**[1]

Innovative is a Pennsylvania limited liability company with a primary place of business and headquarters in Langhorne, Pennsylvania. R 56.1 Statement ¶ 1. The Demand Entities are New York corporations with their primary place of business and headquarters in Long Island City, New York. Id. ¶¶ 2-3. The Demand Entities share a common ownership and "are used interchangeably by the owners." Id. ¶ 4. Innovative is in the business of providing information technology and energy infrastructure solutions, applications, and professional services. Id. ¶ 5.

Around early 2019, Innovative began supplying the Demand Entities with "equipment and services." Id. ¶ 6. Between January 30, 2019, and June 7, 2019, Innovative issued certain invoices (the "Invoices") to the Demand Entities. See id. ¶ 7; Innovative's Statement of Material Facts Pursuant to Local Rule 56.1 ¶ 7, ECF No. 13 (chart listing outstanding invoices, including each invoice's number, date of issuance, due date, and amount); Declaration of Dr. Arpan Patel ("Patel Decl.") Ex. 1, ECF No. 14 (copies of the Invoices). None of the Invoices, with the exception of "Invoice No. 1190," have been paid by the Demand Entities.[2] R. 56.1 Statement ¶ 8.

II. **Procedural History**

On December 20, 2019, Innovative commenced an action against the Demand Entities in the Eastern District of Pennsylvania under Case No. 19-cv-06160 (the "Innovative Complaint"). See Affirmation of Elizabeth Usinger ("Usinger Affirmation") ¶ 5, Ex. A, ECF No. 15. On March 6, 2020, the Demand Entities moved to dismiss the Pennsylvania action for lack of

---

[1] The facts recounted herein reflect the undisputed, material facts contained in the Demand Entities' Response to Innovative's Rule 56.1 Statement of Undisputed Fact (the "R. 56.1 Statement"). See ECF No. 22.

[2] For Invoice No. 1190 (totaling $27,232.04), the Demand Entities have paid $18,500.00, leaving a balance of $8,732.04. See R. 56.1 Statement ¶¶ 8-9.

jurisdiction. Id. ¶ 6. On March 16, 2020, the Demand Entities commenced the instant action in this Court under Case No. 20-cv-02127 (the "Demand Complaint"). Id. ¶ 7, Ex. B; see also ECF No 3. On April 23, 2020, the Demand Entities' motion to dismiss the Innovative Complaint in the Pennsylvania action was resolved by a stipulation and order directing that the Pennsylvania action be transferred to this Court and consolidated with the instant action. See Usinger Affirmation ¶ 8, Ex. C. Upon transfer to this Court, the Pennsylvania action was initially assigned Case No. 20-cv-03273, but on July 16, 2020, the Honorable Victor Marrero issued an order directing the Clerk of Court to consolidate the Pennsylvania action with the instant action under one Case Number, 20-cv-02127. See id. ¶ 9, Ex. D; see also ECF No. 6.[3]

On January 15, 2021, the Demand Entities filed an Answer and Affirmative Defenses (the "Demand Answer") to the Innovative Complaint. See Usinger Affirmation ¶ 10, Ex. E. On January 22, 2021, Innovative filed an Answer and Affirmative Defenses to the Demand Complaint (the "Innovative Answer"). See id. ¶ 11, Ex. F; see also ECF No. 8. On March 1, 2021, a Civil Case Management Plan and Scheduling Order was issued (the "Scheduling Order"), and the parties consented to all proceedings before a Magistrate Judge under 28 U.S.C. § 636(c).[4] See Usinger Affirmation ¶¶ 12-13, Ex. G; see also ECF Nos. 11, 25. As set forth in the Scheduling Order, all discovery closed on July 30, 2021. See ECF No. 11 at 2. No party requested an extension of that deadline and thus, pursuant to the scheduling order, the case was ready for trial as of July 30, 2021. See id.

---

[3] The July 16, 2020 Order directed the Clerk of Court to close Case No. 20-cv-03273, see ECF No. 6, and the case was terminated that day.

[4] On April 29, 2022, this matter was redesignated to the undersigned.

On July 27, 2022, Innovative filed the instant motion for summary judgment. See ECF Nos. 12-16. On August 24, 2022, the Demand Entities filed their opposition to Innovative's motion; the opposition was comprised solely of the Demand Entities' response to Innovative's Rule 56.1 Statement, see ECF No. 22, and the Declaration of Andrew Kourkoumelis, see ECF No. 21 ("Kourkoumelis Decl."). The Demand Entities did not file a memorandum of law in opposition to the motion. On August 31, 2023, Innovative filed its reply brief in further support of its motion. See ECF No. 23.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage . . . is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Gallo 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter or matters that "it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

A fact is material when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if the evidence is such that a jury could return a verdict for the nonmoving party." Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (quoting Anderson, 477 U.S. at 248.). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is

4

sought." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (quoting Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation marks omitted); Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008) (noting the Court must view all facts "in the light most favorable" to the non-moving party). However, a court is not required to draw any inference that is "blatantly contradicted by the record, so that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008) (citing Celotex, 477 U.S. at 322-23); see Anderson, 477 U.S. at 247 ("Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial.") (citation and internal quotation marks omitted). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Arnow v. Aeroflot Russian Airlines, 980 F.Supp.2d 477, 482 (S.D.N.Y. 2013) (quoting Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010)) (internal quotation marks omitted; alteration in original). Rather, to survive summary judgment, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). For a genuine dispute regarding a material fact to warrant a jury trial, there must be sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249 (citation and internal quotation marks omitted). "When no rational

jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo, 22 F.3d at 1224.

## DISCUSSION

I. **Innovative is entitled to summary judgment for its breach-of-contract claim.**

A. Breach of Contract

Innovative contends that it had an agreement with the Demand Entities to provide them certain equipment and services in exchange for payment, and that the parties' agreement was memorialized in invoices sent by Innovative to the Demand Entities. See Innovative Br. at 7-8, ECF No. 16; Innovative Complaint ¶¶ 20-23 (Count I). Innovative, as the party seeking summary judgment, bears the burden of proving all elements of its breach-of-contract claim. See LG Cap. Funding, LLC v. Exeled Holdings, Corp., No. 17-CV-04006 (RJS), 2017 WL 5069113, at *1 (S.D.N.Y. June 23, 2017) (moving party bears the burden of demonstrating the absence of a genuine issue of material fact with respect to elements of breach-of-contract claim) (citations omitted). As explained below, Innovative has met that burden here.

Under New York law, a claim for breach of contract requires: (i) the existence of an enforceable agreement; (ii) adequate performance of the contract by the plaintiff; (iii) a breach of that agreement by the defendant; and (iv) damages resulting from the breach. See, e.g., DeFlora Lake Dev. Assocs., Inc. v. Hyde Park, 654 F. App'x 9, 10 (2d Cir. 2016) (citation omitted); Guzman v. Ramos, 191 A.D.3d 644, 646 (2d Dep't 2021). To create a binding contract, "there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp., 93 N.Y.2d 584, 589 (1999) (citation omitted). "Generally, courts look to the to

the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." Id.; see also Broder v. Cablevision Sys. Corp., 329 F. Supp. 2d 551, 556 (S.D.N.Y. 2004) ("For a contract to be valid under New York law, there must be an offer, acceptance, and consideration."); Int'l Paper Co. v. Suwyn, 966 F. Supp. 246, 254 (S.D.N.Y. 1997) (explaining that a contract is enforceable under New York law if there is a "meeting of the minds between the parties regarding material elements of the agreement"). "Consideration to support an agreement exists where there is either a benefit to the promisor or a detriment to the promisee." Guzman, 191 A.D.3d at 646 (citations and internal quotation marks omitted).

Under New York's Uniform Commercial Code, "[a] contract for a sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." N.Y. U.C.C. § 2-204(1). The U.C.C.'s standard "is quite liberal and does not require every contractual term to be spelled out in detail." Dell's Maraschino Cherries Co., Inc. v. Shoreline Fruit Growers, Inc., 887 F. Supp. 2d 459, 471 (E.D.N.Y. 2012); see also N.Y. U.C.C. § 2-204(3). Moreover, under New York law, "[a]n invoice between merchants containing the names and addresses of the buyer and seller, the date, the payment terms, the price of the goods, a description of the goods, the amount of the goods and the total price of the sale constitutes a writing in confirmation of a contract for the sale of goods satisfying the statute of frauds, provided that no written notice of objection is given as to the contents of the invoice within 10 days of receipt." M. Slavin & Sons Ltd., Glatt Gourmet Cuisine, Inc., 23 Misc. 3d 18, 19 (2d Dep't App. Term 2009).

The Demand Entities do not dispute that: in or around early 2019, Innovative began supplying them with equipment and services; Innovative issued the Invoices to the Demand

7

Entities for the equipment and services supplied; and, notably, the Invoices have not been paid.[5] See R. 56.1 Statement ¶¶ 6-8; see also Patel Decl. ¶¶ 4-9. Innovative has supplied copies of the Invoices it sent the Demand Entities (see Patel Decl. ¶ 8, Ex. 1) for equipment and services rendered by Innovative to the Demand Entities. See R. 56.1 Statement ¶¶ 6-7; Patel Decl. ¶¶ 5-8, Ex. 1. Each invoice includes, among other things, an invoice number, date of issuance, a description of the service performed, and the total amount owed for that service. See Patel Decl. ¶¶ 7-8, Ex. 1. Thus, each Invoice memorializes a binding, enforceable contract between the parties, formed by a meeting of the minds and valid consideration under New York law. See M. Slavin & Sons, 23 Misc. 3d at 19 (finding an invoice constitutes a valid and enforceable contract) (citing B&R Textile Corp. v. Domino Textiles, 77 A.D.2d 539 (1st Dep't 1980)); Abeles, Inc. v. Creekstone Farms Premium Beef, LLC, No. 06-CV-3893 (JFB) (AKT), 2010 WL 446042, at *9 (E.D.N.Y. Feb. 1, 2010) ("The invoices describe the various terms of sale . . . and are valid and enforceable contracts") (citing N.Y. U.C.C. § 2-204(1)); AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc., No. 06-CV-2142 (GEL), 2007 WL 4302514, at *6 (S.D.N.Y. Dec. 7, 2007) (finding that "[plaintiff's] invoices created an enforceable contract"); see also Townsquare Media, Inc. v. Regency Furniture, Inc., No. 21-CV-4695 (KMK), 2022 WL 4538954, at *14 (S.D.N.Y. Sept. 28, 2022) (finding Defendants having paid a portion of the invoices at-issue established "both the mutual assent to contract as well as the existence of an enforceable contract"). And, the Demand Entities' failure to remit payment, in whole or part, for the goods and services provided by Innovative, constitutes a breach of those contracts.

---

[5] The Demand Entities admit that the Invoices have not been paid with the exception of Invoice No. 1190, which the Demand Entities admit was paid in part. See R. 56. 1 Statement ¶ 8; see also Patel Decl. ¶ 7 n.1.

In opposition to Innovative's summary judgment motion, the Demand Entities rely on a single declaration from Andrew Kourkoumelis, the President and CEO of each of the Demand Entities. See ECF No. 21. The Demand Entities dispute that "[t]he total sum due and owing the Demand Entities to Innovative for the Invoices is $395,433.64." See R. 56.1 Statement ¶ 10; Kourkoumelis Decl. ¶ 5. They also claim that Innovative failed to provide the agreed-upon services in a manner consistent with industry standards, requiring the Demand Entities to incur costs to remedy Innovative's substandard work. Kourkoumelis Decl. ¶¶ 5, 8-10. But the Demand Entities' Rule 56.1 response and Kourkoumelis' Declaration rely on "blanket denials" with no support "by citation to any evidence." Chimarev v. TD Waterhouse Investors Servs., Inc., 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003); see also New York State Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648 (2d Cir. 2005) (finding it within the discretion of the district court to deem the moving party's statement of material facts admitted where the opposing party "offered mostly conclusory denials" and "failed to include any record citations"). For example, Kourkoumelis restates the allegation in the complaint that Innovative "performed its services in such a negligent, careless and[/]or reckless manner so as to cause significant harm" to the Demand Entities, but points to no evidentiary material whatsoever to substantiate those allegations. See Kourkoumelis Decl. ¶¶ 8-10; Demand Complaint ¶¶ 10-12.

The Demand Entities stress that the case has been "dormant for nearly two years without any discovery." Kourkoumelis Decl. ¶ 4. But that argument ignores that the Demand Entities had ample opportunity to conduct discovery in order to adduce evidence to support its claims and defenses. Discovery closed in this case on July 30, 2021, and no party requested an extension of that deadline. The fact that one or both of the parties allowed the case to remain dormant does

9

not excuse a party from its responsibility to prepare its case for summary judgment or trial.[6] If the Demand Entities had a defense to Innovative's breach-of-contract claim, it was their burden to uncover facts to support that defense through discovery. They have not cited to any evidentiary material to support their claims, relying instead on a bare-bones declaration with unsupported allegations. See Rozenfeld v. Dep't of Design & Constr. of City of New York, 875 F. Supp. 2d 189, 210 (E.D.N.Y. 2012) (noting that "unsupported allegations do not create a material issue of fact") (citing Weinstock v. Columbia University, 224 F.3d 33, 41 (2d Cir. 2000)); In re Bulk Oil (USA) Inc., No. 89-B-13380, 2007 WL 1121739, *15 (S.D.N.Y. Apr. 11, 2007) ("Failure to provide any citation at all will leave a factual allegation without evidentiary value."). The Demand Entities have thus failed to raise any genuine issue of fact as to Innovative's breach-of-contract claim.

The Demand Entities assert 21 affirmative defenses (the "Affirmative Defenses) in their Answer. See Demand Answer at 4-7. Innovative argues that the Affirmative Defenses should be dismissed on the merits because they fail to create genuine issues of material fact, and because the Demand Entities' opposition to Innovative's instant motion fails to respond to Innovative's arguments addressing each Affirmative Defense. See ECF No. 16 at 15-24; ECF No. 23 at 6-7.

On a motion for summary judgment, the moving party "bears the initial burden of showing that there is no genuine dispute as to a material fact." Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018) (citation and internal quotation marks omitted). "But where 'the burden of proof

---

[6] To be sure, "[i]f the party opposing a summary judgment motion shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may deny the motion or allow time to take discovery." See Walden v. Sanitation Salvage Corp., No. 14-CV-112 (ER), 2015 WL 1433353, at *2-3 (S.D.N.Y. Mar. 30, 2015) (citing Fed. R. Civ. P. 56(d)). No such showing has been made here. The Demand Entities were afforded five months to conduct discovery and did not request additional time.

at trial would fall on the nonmoving party,' the moving party can shift the initial burden by 'point[ing] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.'" Id. (quoting Simsbury-Avon Pres. Soc'y, LLC v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009)) (alteration in original). "It follows that, where a plaintiff's motion for summary judgment would be meritorious absent the assertion of an affirmative defense, in order to avoid summary judgment, the defendant must adduce evidence which, viewed in the light most favorable to and drawing all reasonable inferences in favor of [it], would permit judgment for [it] on the basis of that defense." Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC, 399 F. Supp. 3d 120, 127 (S.D.N.Y. 2019) (citation and internal quotation marks omitted; alterations in original).

     Innovative has met its burden of demonstrating that there is no genuine issue of material fact as to its breach-of-contract claim, and therefore the burden shifts to the Demand Entities to demonstrate that they would be entitled to judgment in their favor on the basis of one or more of its Affirmative Defenses. See, e.g., Townsquare Media, 2022 WL 4538954, at *5, 20-21. To survive a summary judgment motion, a non-movant "need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" Wrobel v. County of Erie, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," Guardian Life Ins. Co. v. Gilmore, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (citation and internal quotation marks omitted); see also Wright, 554 F.3d at 266 ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading"). The Demand Entities have not met that burden here. As discussed, they

provide no factual support for any of their Affirmative Defenses. Kourkoumelis' declaration is conclusory, merely restates verbatim what is in the pleadings, and provides no evidentiary support for the allegations.[7] See Arnow, 980 F.Supp.2d at 482 ("[S]elf-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and to defeat a motion for summary judgment.") (citation omitted).

In short, the Demand Entities "have not come forward with specific facts that show that these affirmative defenses create a genuine issue for trial," and consequently the affirmative defenses "are insufficient to defeat" Innovative's motion for summary judgment. F.D.I.C. v. Betancourt, 865 F. Supp. 1035, 1041 n.2 (S.D.N.Y. 1994). Accordingly, Innovative has established its entitlement to judgment as a matter of law on its breach-of-contract claim for the unpaid Invoices in the amount of $395,433.64.

B. Unjust Enrichment

Innovative also asserts a claim for unjust enrichment. See Innovative Compl. ¶¶ 24-27 (Count II); Innovative Br. at 9-10. "The theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516 (2012) (citations, internal quotation marks, and alterations omitted). Where, as here, the parties

---

[7] The Demand Entities also fail to address Innovative's arguments on the merits as to all of the Affirmative Defenses. The Demand Entities have thus "abandoned" their Affirmative Defenses by failing to respond to Innovative's arguments on the merits. See Townsquare Media, No. 21-CV-4695 (KMK), 2022 WL 4538954, at *20 (S.D.N.Y. Sept. 28, 2022) (citations omitted); see also Gustavia Home, LLC v. Hoyer, 362 F. Supp. 3d 71, 85-86, 88-93 (E.D.N.Y. 2019) (deeming affirmative defenses attacked by plaintiff and unaddressed by defendants abandoned); Summit Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379, 397-98 (S.D.N.Y. 2014) (same); Maxim Group LLC v. Life Partners Holdings, Inc., 690 F.Supp.2d 293, 310 (S.D.N.Y. 2010) (affirmative defenses deemed abandoned where defendant failed to brief them in opposition to plaintiff's summary judgment motion).

have a valid and enforceable agreement "governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that same subject matter" is typically precluded. See IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142 (2009) (citation omitted). Indeed, courts in this Circuit have long held that a claim for unjust enrichment is duplicative of a breach-of-contract claim where a valid contract exists. See Fometal S.R.L. v. Keili Trading LLC, No. 22-CV-1928 (KPF), 2022 WL 17485317, at *2 (S.D.N.Y. Dec. 7, 2022) (citing cases).[8]

Innovative's unjust enrichment claim rests on the same factual allegations as its breach of contract claim—that is, both claims stem from the unpaid invoices for equipment and services. See R. 56.1 Statement ¶¶ 6-10. And, for the reasons discussed, there is no factual dispute that the Invoices represent valid, enforceable contracts. Accordingly, Innovative's unjust-enrichment claim is dismissed as duplicative of its claim for breach of contract. See In re Columbia Tuition Refund Action, 523 F. Supp. 3d 414, 429-30 (S.D.N.Y. 2021) (citing cases); INTL FCStone Markets, LLC v. Agro Santino OOD, No. 20-CV-2658 (JMF), 2021 WL 2354567, at *1 (S.D.N.Y. June 9, 2021); Bautista v. CytoSport, Inc., 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016).

C. Pre- and Post-Judgment Interest

Innovative also requests statutory pre-judgment interest on the amount owed from the Invoices. See Innovative Complaint at 4; Innovative Br. at 8. Under New York law, prejudgment

---

[8] See Pro. Merch. Advance Capital, LLC v. C Care Servs., LLC, No. 13-CV-6562 (RJS), 2015 WL 4392081, at *6 (S.D.N.Y. July 15, 2015) (dismissing sua sponte plaintiff's unjust-enrichment claim as duplicative of its breach-of-contract claim where "there [was] an enforceable agreement and the same damages [were] sought"); Nat'l Westminster Bank PLC v. Ret. Care Assocs., Inc., No. 98-CV-6023 (JSM), 1999 WL 239677, at *4 (S.D.N.Y. Apr. 23, 1999) ("Where there is an enforceable written contract governing the particular subject matter, the claims based on quasi-contract theories, such as unjust enrichment . . . can be dismissed because they are duplicative of the breach of contract claim.").

13

interest is calculated at the statutory rate of 9% per year, computed from the date the cause of action first accrued. See CareandWear II, Inc. v. Nexcha LLC, 581 F. Supp. 3d 553, 558 (S.D.N.Y. 2022) (citing N.Y. C.P.L.R. §§ 5001, 5004). And "[w]here damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." Id. (citing N.Y. C.P.L.R. § 5001(b)). The first unpaid invoice is dated January 30, 2019, and the final unpaid invoice is dated June 7, 2019. See Patel Decl. ¶ 7, Ex. 1 at 2, 57. Payment was due 90 days after issuance of the invoice.[9] As such, the first date upon which Innovative's cause of action for breach of contract accrued is April 30, 2019—90 days after January 30, the date of the first invoice. Payment on the last invoice accrued on September 5, 2019—90 days after June 7, the date of the last invoice. The midpoint between those two dates is July 3, 2019. Accordingly, Innovative is entitled to prejudgment interest at the statutory rate of 9% per year, calculated on the entire amount of unpaid invoices ($395,433.64) from July 3, 2019, to the date of entry of judgment.

Moreover, in a diversity case such as this, post-judgment interest is mandated by federal statute. See 28 U.S.C. § 1961(a) ("Interest *shall* be allowed on any money judgment in a civil case recovered in a district court.") (emphasis added); see also Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008) ("[P]ost judgment interest is governed by federal statute" in diversity cases); Espinoza v. Broadway Pizza & Rest. Corp., No. 17-CV-7995 (RA) (KHP), 2021 WL 7903991, at *14 (S.D.N.Y. Nov. 18, 2021) ("Post-judgment interest is mandatory in any civil case where money damages are recovered.") (citation omitted). Thus, Innovative is entitled to an award of post-judgment interest, to be calculated from the date the Clerk of Court enters

---

[9] Innovative's opening brief states that the date of payment for each invoice was "30 days after issuance," see ECF No. 16 at 8, but the Invoices themselves reflect that payment was due 90 days after issuance. See Patel Decl., Ex. 1.

14

judgment in this action until the date of payment by the Demand Entities, using the federal interest rate set forth in 28 U.S.C. § 1961.

**II.     Innovative is entitled to summary judgment dismissing Demand's claims.**

The Demand Complaint asserts four state-law causes of action against Innovative, for negligence, breach of contract, breach of warranty, and unjust enrichment. Innovative seeks dismissal of these causes of action, arguing that the Demand Entities have failed to adduce support for any of their claims. Innovative Br. at 10. Innovative is correct, and for the reasons that follow, each of the causes of action in the Demand Complaint are dismissed with prejudice.

A.  Negligence Claim

In its first cause of action, the Demand Entities assert that pursuant to "the parties' agreements and applicable codes, rules and/or standards in the industry" entered into for "the Work"[10] Innovative was retained to provide for the Demand Entities, Innovative "owed a duty to perform its work in a safe, proper, and/or workman like manner," and breached that duty by "negligently, carelessly, or recklessly perform[ing] its obligations," causing the Demand Entities "substantial amounts of damages." See Demand Complaint ¶¶ 15-20. Under New York law, "to establish a negligence cause of action, a plaintiff must demonstrate (1) the existence of a duty on the defendant's part to the plaintiff; (2) a breach of that duty and (3) injury to the plaintiff as a result thereof." Naughright v. Weiss, 857 F. Supp. 2d 462, 472 (S.D.N.Y. 2012) (citation omitted); see Guzman v. Jamaica Hosp. Med. Ctr., 190 A.D.3d 705, 706 (2d Dep't 2021).

The Demand Entities allege various instances in which they claim that Innovative breached a duty by performing its services in a negligent, careless, or reckless manner, including

---

[10] The Demand Entities generally define "the Work" as "various projects in and around New York City" for "certain networking solutions and IT solutions" between November of 2018 and June of 2019. See Kourkoumelis Decl. ¶ 7; Demand Complaint ¶ 9.

15

but not limited to: failing to deliver certain equipment; failing to deliver equipment in a timely manner; delivering equipment without information and training necessary to operate it; delivering wrong equipment; failing to assemble certain equipment; failing to configure a firewall and provide certain engineering services; failing to obtain a license to integrate a camera system; failing to perform certain testing and install certain upgrades; and delaying provision of other services. See Demand Complaint ¶¶ 10-11, 15-18. The Demand Entities also allege that in May 2019, they requested a new account manager, who subsequently failed to deliver certain periodic reports. See Demand Complaint ¶ 11(l). The Complaint further alleges that the Demand Entities suffered over $1 million in damages as a result of these deficiencies. See Demand Complaint ¶¶ 12-13, 20-22; Kourkoumelis Decl. ¶¶ 9-10.

As already discussed, in opposing summary judgment, the Demand Entities rely on the Kourkoumelis declaration, which provides no corresponding citations to factual support substantiating the Demand Entities' allegations. See Kourkoumelis Decl. ¶¶ 7-10. The Demand Entities thus point to no factual support for their claim that Innovative inadequately performed its work. What's more, the Demand Entities provide no documentary support for the claim that they incurred damages to remedy Innovative's allegedly inadequate work. Accordingly, because the Demand Entities have failed to adduce any evidence demonstrating either a breach of any duty by Innovative or resulting damages, summary judgment is granted in Innovative's favor as to the Demand Entities' first cause of action.

    B.  Breach-of-Contract Claim

In the second cause of action, the Demand Entities raise a breach-of-contract claim. See Demand Complaint ¶¶ 23-29. The Demand Entities allege that they "entered into an agreement" with Innovative, pursuant to which Innovative "was obligated to provide the Work in a

workmanlike manner in accordance with generally accepted . . . industry standards." See id. ¶¶ 24-25. The Demand Entities allege that Innovative failed to provide such services, breaching the agreements and causing significant harm to the Demand Entities in the form of incurred losses, damages, and additional expenses estimated to exceed $1,000,000. See id. ¶¶ 26-28. Here, too, the Demand Entities have not adduced any evidence, beyond the unsupported assertions in Kourkoumelis' declaration, to substantiate their claim that Innovative failed to adequately perform the work or that Innovative's performance under the agreement caused the Demand Entities any damages. Accordingly, Innovative is entitled to summary judgment dismissing the Demand Entities' breach-of-contract claim.

    C. Claim for Breach of Implied Warranty

Third, the Demand Entities allege that Innovative's conduct "constitutes a breach of any implied warranty contained in the agreements or the industry," and specifically, that Innovative breached warranties "that all Work would be completed in a workman like manner according to standard practices" by failing to "deliver the Work in an appropriate manner and form." See Demand Complaint ¶¶ 31-32. According to the Demand Entities, this alleged breach caused them to incur losses, damages, and expenses estimated to exceed $1,000,000. Id. ¶ 33. Here, too, the Demand Entities point to nothing to support their claim that Innovative's work was deficient or inadequate, or that they suffered any damages as a result. Accordingly, this claim is also dismissed.

    D. Unjust-Enrichment Claim

In their fourth and final cause of action, the Demand Entities assert a claim for unjust enrichment. The Demand Entities allege that Innovative "has been unjustly enriched at [the Demand Entities'] expense to the tune of at least $500,000." See Demand Complaint ¶ 37. To

state a claim for unjust enrichment, Plaintiff must show that "(1) the other party was enriched, (2) at [the plaintiff's] expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." Mandarin Trading Ltd. v Wildenstein, 16 N.Y.3d 173, 182 (N.Y. 2011) (citations and internal quotation marks omitted). As already discussed, the Demand Entities provide no evidentiary support to substantiate their claim. The Demand Entities have not shown that they paid any monies to Innovative for deficient work or services that were not rendered. In short, "[w]ithout sufficient facts, conclusory allegations that fail to establish that a defendant was unjustly enriched at the expense of a plaintiff warrant dismissal." Id. at 182-83. Accordingly, summary judgment in favor of Innovative and dismissing the Demand Entities' unjust-enrichment claim is warranted and appropriate.

## CONCLUSION

For the reasons stated herein, Innovative's motion for summary judgment is **GRANTED**. Innovative is entitled to an award of $395,433.64, the outstanding sum due for the invoices. The Clerk of Court is directed to calculate pre-judgement interest on that amount, at the statutory rate of 9% per year, beginning on July 3, 2019. Further, Innovative is entitled to post-judgment interest at the rate identified in 28 U.S.C. § 1961, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment by the Demand Entities. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 12.

**SO ORDERED.**

DATED:    New York, New York
          March 30, 2023

_____
VALERIE FIGUEREDO
United States Magistrate Judge